**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                )
LINDA P. WALSTON,               )
                                )
            Plaintiff,          )
                                )
        v.                      ) Civil Action No. 15-2202 (EGS)
                                )
UNITED STATES DEPARTMENT OF     )
DEFENSE,                        )
                                )
            Defendant.          )
_____)

<u>**MEMORANDUM OPINION**</u>

The plaintiff, Linda P. Walston, filed this civil case against the defendant, the United States Department of Defense ("DOD"), alleging violations of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. *See* Compl., ECF No. 1 ¶¶ 1-2, 19-20. Currently pending before the Court is DOD's motion for summary judgment. Upon consideration of the motion, the response and reply thereto, the applicable law, and the entire record, DOD's motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**.

I.   **Background**

Ms. Walston discovered that someone hacked her personal computer on various occasions between 2010 and 2014 and, in the course of that hacking activity, altered, deleted, or destroyed certain of her computer files and operating systems. Def.'s Statement of Material Facts ("Def.'s SMF"), ECF No. 12-1 ¶ 2;

1

Pl.'s Opp. to Def.'s Mot. for Summ. J. ("Pl.'s Opp."), ECF No. 13 at 3; Pl.'s Statement of Material Facts ("Pl.'s SMF"), ECF No. 13-1 ¶ 7. One of the computer forensics specialists that Ms. Walston hired to identify the hacker suggested to her that the hacker might have been an employee of the Defense Information Systems Agency ("DISA"). Def.'s SMF ¶ 2; Pl.'s Opp. at 3; Pl.'s SMF ¶ 7. DISA is a component of DOD. Compl. ¶ 3. Accordingly, Ms. Walston filed a complaint with DOD's Office of Inspector General ("DOD OIG") on September 2, 2014. Pl.'s SMF ¶ 7; Def.'s Resp. to Pl.'s SMF, ECF No. 14-1 ¶ 7. The complaint alleged that a DISA employee had hacked her computer, altered or deleted files, and reported Ms. Walston's activities to a third party. Def.'s SMF ¶ 2. The complaint was delegated to DISA's Office of the Inspector General ("DISA OIG") and assigned the case number 2014-0193. Pl.'s SMF ¶ 7; Def.'s Resp. to Pl.'s SMF ¶ 7.

On April 21, 2015, Ms. Walston filed a FOIA request with DISA for "all documents, reports, records, statements, and files that refer or relate to the DISA OIG complaint #2014-0193." Def.'s SMF ¶ 1. Eventually, on November 3, 2015, DISA responded to Ms. Walston's request by providing her with two redacted documents: (1) a December 24, 2014 memorandum from DISA OIG to DOD OIG concluding that Ms. Walston's allegations that a DISA employee had hacked her computer were unfounded and (2) the report that provided the analysis undergirding the determination

2

that the allegations were unfounded. Def.'s SMF ¶ 3; Pl.'s SMF ¶ 11. Finding DISA's records production inadequate, on November 13, 2015 Ms. Walston filed an administrative FOIA appeal, Def.'s SMF ¶ 4; Pl.'s SMF ¶ 12, and ultimately filed this action against DOD on December 18, 2015. Def.'s SMF ¶ 4; Pl.'s SMF ¶ 13.

On March 7, 2016, DISA provided Ms. Walston with 13 pages of emails among DISA analysts discussing their analyses of her complaint that a DISA employee had hacked her computer. Def.'s SMF ¶ 5; Pl.'s SMF ¶ 17. Ms. Walston, in turn, sent an email through counsel asserting that DISA still had not provided all of the documents and records that she had requested. Def.'s SMF ¶ 6; Pl.'s SMF ¶ 18. On March 23, 2016, DISA produced an additional 32 pages of internal administrative documents and documents that Ms. Walston had submitted to DISA. Def.'s SMF ¶ 7; Pl.'s SMF ¶ 19.

On June 6, 2016, DOD filed its motion for summary judgment. *See* Def.'s Mot. for Summ. J., ECF No. 12. DOD asserts that summary judgment is warranted because it conducted an adequate search for records in response to Ms. Walston's FOIA request; properly redacted its productions pursuant to the applicable FOIA exemptions; and complied with FOIA's segregability requirement. *See generally* Def.'s Mem. in Supp. of Mot. for Summ. J. ("Def.'s Mem. Supp."), ECF No. 12. In her opposition,

3

filed on July 11, 2016, Ms. Walston does not challenge the propriety of DOD's assertion of FOIA exemptions or its compliance with FOIA's segregability requirement. *See* Pl.'s Opp. at 6. Instead, her only argument is that genuine issues of material fact concerning the adequacy of DISA OIG's document search foreclose a grant of summary judgment as to that issue. *See id.* at 7-11. On August 11, 2016, DOD filed its reply brief, maintaining that an adequate search was conducted. *See generally* Def.'s Reply, ECF No. 14. DOD's motion is ripe for adjudication.

## II. Standard of Review

Summary judgment is granted when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002). In determining whether a genuine issue of fact exists, the court must view all facts in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). After the underlying facts and inferences drawn from them are analyzed in the light most favorable to the FOIA requester, summary judgment is appropriate when the agency proves that it has fully discharged its FOIA obligations. *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996) (citing *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1350 (D.C. Cir. 1983)). "FOIA cases typically and appropriately are decided on motions

for summary judgment." *Gold Anti-Trust Action Comm., Inc. v. Bd. of Governors of the Fed. Reserve Sys.*, 762 F. Supp. 2d 123, 130 (D.D.C. 2011) (internal quotation marks omitted).

When considering a motion for summary judgment under FOIA, the court must conduct a de novo review of the record. *See* 5 U.S.C. § 552(a)(4)(B). The court may award summary judgment on the basis of information provided by the agency in affidavits or declarations. *See Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *Vaughn v. Rosen*, 484 F.2d 820, 826-28 (D.C. Cir. 1973). Agency affidavits or declarations must be "relatively detailed and non-conclusory." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks omitted). Such affidavits or declarations are "accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *Id.* (internal quotation marks omitted).

## III. Analysis

### A.   The Search for Records

In response to a challenge to the adequacy of its search for requested records, an agency "must show beyond material doubt . . . that it has conducted a search reasonably calculated to uncover all relevant documents." *Weisberg*, 705 F.2d at 1351. Thus, the "'issue is *not* whether any further documents might conceivably exist but rather whether the government's search for

responsive documents was adequate.'" *Id.* (quoting *Perry v. Block*, 684 F.2d 121, 128 (D.C. Cir. 1982)). The adequacy of a search is measured by the reasonableness of the agency's effort to find the responsive records in light of the specific request that was made, *Meeropol v. Meese*, 790 F.2d 942, 956 (D.C. Cir. 1986), and depends upon the circumstances of the case. *Weisberg*, 705 F.2d at 1351. To meet its burden, the agency may provide "'a reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials . . . were searched.'" *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 313-14 (D.C. Cir. 2003) (quoting *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)). Any factual assertions in such an affidavit will be accepted as true unless the requesting party submits affidavits or other documentary evidence contradicting those assertions. *Wilson v. U.S. Dep't of Transp.*, 730 F. Supp. 2d 140, 148 (D.D.C. 2010) (citing *Neal v. Kelly*, 963 F.2d 453, 456-57 (D.C. Cir. 1992)).

Here, DOD initially offered a declaration of Mark H. Herrington, an Associate Deputy General Counsel in the Office of General Counsel of DOD responsible for overseeing DOD's FOIA litigation, that averred that "searches were completed using the case number '2014-0193'"; that records pertaining to DISA OIG investigations—including reports, letters, and emails—are

6

stored in an electronic database and in a shared drive and are organized exclusively by case number; and that DISA OIG does not keep paper files for its investigations. First Decl. of Mark H. Herrington, ECF No. 12-2 ¶¶ 1, 8.

Ms. Walston challenges the sufficiency of this declaration. She first argues that even though Mr. Herrington asserts that the search was completed using the search term "2014-0193," she has emails between herself and DISA OIG that bear the subject line "Case #2014-0193" and yet those emails were not part of the records DISA OIG provided to her pursuant to her FOIA request. Pl.'s Opp. at 8. Ms. Walston reasons that the fact that these emails are missing from DISA OIG's production indicates that its search was inadequate. *See id.* at 8-9. She also argues that Mr. Herrington's declaration does not reveal who conducted the search, what process those persons used, whether Mr. Herrington was directly involved in the search, and whether the DISA OIG electronic database where investigative materials are stored was actually searched. *Id.* at 10. Further, because of these shortcomings, she contends that there is a dispute of fact as to whether all of the searches conducted actually used the search term "2014-0193." Pl.'s SMF ¶ 3. Additionally, she contends that DISA OIG investigative records are retrievable by searching for an individual's name, *id.* ¶ 4 (citing Privacy Act of 1974; System of Records, 79 Fed. Reg. 64,581, 64,582 (Oct. 30, 2014)),

but Mr. Herrington's declaration asserts that the records "are stored exclusively by case number." First Decl. of Mark H. Herrington ¶ 8. She also contends that DISA OIG investigative records are stored in electronic and paper form, Pl.'s SMF ¶ 5 (citing 79 Fed. Reg. at 64,582), but Mr. Herrington's declaration asserts that DISA OIG "does not keep a paper file for investigations." First Decl. of Mark H. Herrington ¶ 8. She also argues that Mr. Herrington's declaration does not indicate where the search took place——*i.e.*, whether it was conducted at the "primary location" for DISA OIG's investigative materials in Fort Meade, Maryland or at the "decentralized location" at Scott Air Force Base in Illinois. Pl.'s Opp. at 11 (citing 79 Fed. Reg. at 64,581).

That certain emails between Ms. Walston and DISA OIG bearing the subject line "Case #2014-0193" did not turn up in DISA OIG's search and, consequently, were not part of its production to Ms. Walston does not support the conclusion that DISA OIG's search was inadequate because "the adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Iturralde*, 315 F.3d at 315. In response to Ms. Walston's other challenges to the adequacy of the search, DOD has provided a second declaration of Mr. Herrington. Second Decl. of Mark H. Herrington, ECF No. 14-2 ¶ 2 ("The purpose of

th[is] declaration is to address issues raised by [Ms. Walston] in her opposition to D[O]D's motion for summary judgment."). Therein Mr. Herrington specifies that DISA OIG searched for responsive records in its electronic database, its shared drive, and its investigators' individual emails files. *Id.* ¶ 5. He also provides that investigators working for DISA OIG conducted the search, and the search terms they used "included" the case number "2014-0193" and the name "Walston." *Id.* Mr. Herrington also indicates that paper files are kept for DISA OIG investigations in "rare cases," like those involving original wet signatures or documents having historical significance, but Ms. Walston's case was not one that would involve paper files. *Id.* ¶ 6. Mr. Herrington concludes by averring that DISA OIG "conducted a thorough and reasonable search." *Id.* ¶ 7.

The Court can "rel[y] on supplemental declarations submitted with an agency's reply memorandum to cure deficiencies in previously submitted declarations where, as here, the [p]laintiff filed no motion for leave to file a surreply challenging [the] defendant's supplemental declarations." *DeSilva v. U.S. Dep't of Housing and Urban Dev.*, 36 F. Supp. 3d 65, 72 (D.D.C. 2014) (internal quotation marks omitted). Accordingly, the Court can consider Mr. Herrington's second declaration when assessing the adequacy of DISA OIG's search. That supplemental declaration does go a long way toward

resolving concerns about the adequacy of the search.
Specifically, it makes clear that DISA OIG's electronic database
for investigative materials——along with its shared drive and its
individual investigators' email accounts——was actually searched;
that the search terms used "included" not just the case number
"2014-0193" but also the name "Walston"; that the search was
conducted by DISA OIG investigators; and that Ms. Walston's
complaint was not the sort that would spawn paper records.
Second Decl. of Mark H. Herrington ¶¶ 5-6; *see also* Def.'s Resp.
to Pl.'s SMF ¶¶ 3-5. In short, through this supplemental
declaration, DOD has adequately responded to most of Ms.
Walston's valid concerns about the adequacy of DISA OIG's
search.

Even so, Mr. Herrington's supplemental declaration still
does not permit DOD to carry its burden of demonstrating that
DISA OIG's search was adequate. It is "*necessary*" that the
declaration that DOD relies upon aver that "all files likely to
contain responsive materials . . . were searched." *Oglesby*, 920
F.2d at 68 (emphasis added). Here, Mr. Herrington's supplemental
declaration makes clear that searches were conducted in DISA
OIG's electronic database, in its shared drive, and in its
investigators' email files, and his supplemental declaration
makes clear that there is no reason to think that there are
paper files connected to the investigation of Ms. Walston's

complaint. *See* Second Decl. of Mark H. Herrington ¶¶ 5-6. But nowhere does Mr. Herrington state that the electronic database, the shared drive, and the investigators' email files constitute the entire universe of files likely to contain responsive materials. The omission of this necessary statement is all the more troubling because it appears that investigative materials in the DISA OIG database might be located in the "primary location" in Maryland or in the "decentralized location" in Illinois. *See* Pl.'s Opp. at 11 (citing 79 Fed. Reg. at 64,581). Nowhere does the supplemental declaration specify where the searches occurred or, if the searches took place in one geographic location, whether those searches canvassed all of the materials in both possible locations. Without the "necessary" statement that the entire universe of files likely to contain responsive records was searched, the Court is foreclosed from granting summary judgment as to the adequacy of DISA OIG's search. *See Oglesby*, 920 F.2d at 68.

Additionally, for DOD to carry its burden of demonstrating the adequacy of DISA OIG's search, the declaration it relies upon must set forth "*the* search terms" used in the search, not *some* of the search terms used. *Oglesby*, 920 F.2d at 68 (emphasis added). Mr. Herrington's supplemental declaration avers that the search terms "*included*" the case number "2014-0193" and the name "Walston." Second Decl. of Mark H. Herrington ¶ 5 (emphasis

added). Without a complete list of the search terms used in response to Ms. Walston's FOIA request, the Court is unable to conclude that DISA OIG's search was adequate.

For these reasons, DOD's motion for summary judgment as to the adequacy of the search is **DENIED WITHOUT PREJUDICE.** DOD must either (1) conduct a new search for the requested records to ensure that the search is adequate, consistent with governing case law; or (2) provide the Court with an additional declaration from which the Court can find that DISA OIG searched all files likely to contain responsive materials and from which the Court can assess all of the search terms used in DISA OIG's search. In either event, DOD will be required to file a renewed motion for summary judgment with a sufficiently detailed declaration.

### B.   Claimed Exemptions

FOIA requires that agencies release all documents requested unless the information contained within such documents falls within one of nine exemptions. 5 U.S.C. § 552(a), (b). These statutory exemptions must be narrowly construed in favor of disclosure. *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976). The government bears the burden of justifying the withholding of any requested documents. *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991). Here, DOD partially withheld responsive documents pursuant to FOIA Exemptions 5 and 6. Ms.

Walston does not challenge the propriety of these withholdings. Pl.'s Opp. at 6.

### 1.   Exemption 5

FOIA Exemption 5 exempts from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party . . . in litigation with the agency." 5 U.S.C. § 552(b)(5). Thus, "Exemption 5 permits an agency to withhold materials normally privileged from discovery in civil litigation against the agency." *Tax Analysts v. IRS*, 117 F.3d 607, 616 (D.C. Cir. 1997). To qualify as exempt under Exemption 5, "a document must meet two conditions: its source must be a Government agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *Stolt-Nielsen Transp. Grp. Ltd. v. United States*, 534 F.3d 728, 733 (D.C. Cir. 2008) (internal quotation marks omitted). One of the privileges against discovery that Exemption 5 encompasses is the attorney-client privilege. *Mead Data Central, Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 252-53 (D.C. Cir. 1977). "The attorney-client privilege protects confidential communications from clients to their attorneys made for the purpose of securing legal advice or services." *Tax Analysts*, 117 F.3d at 618. "The privilege also protects communications from attorneys to their clients if the communications rest on confidential information

13

obtained from the client." *Id.* (internal quotation marks
omitted). "In the governmental context, the 'client' may be the
agency and the attorney may be an agency lawyer." *Id.*

DOD relies on the attorney-client privilege prong of
Exemption 5 to partially withhold one record. That record is an
email exchange between a DISA investigative analyst and an
attorney in DISA's Office of General Counsel. First Decl. of
Mark H. Herrington ¶ 10. In the email exchange, the analyst asks
the attorney a legal question and the attorney responds, in
turn, with his legal opinion. *Id.* The analyst and the attorney
intended to communicate in confidence. *Id.* Because this email
exchange involved a "request[ ] for and the provision of legal
advice in the context of an attorney-client relationship," the
partial exemption pursuant to the attorney-client privilege was
proper. *See Reliant Energy Power Generation, Inc. v. FERC*, 520
F. Supp. 2d 194, 207 (D.D.C. 2007); *see also Elec. Privacy Info.
Ctr. v. U.S. Dep't of Homeland Sec.*, 117 F. Supp. 3d 46, 65
(D.D.C. 2015) (explaining that there is "no question" that
exemption pursuant to the attorney-client privilege is proper
when the exempted material "contains a communication between
a[n] [agency] employee and a[n] [agency] attorney seeking legal
review and advice."). Accordingly, DOD's motion for summary
judgment on this issue is **GRANTED**.

14

2.   **Exemption 6**

FOIA Exemption 6 exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 6 permits withholding of information when two requirements have been met. *See U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 598 (1982). The first requirement is that "the information must be contained in personnel, medical or 'similar' files." *Id.* The statutory formulation "similar files" is understood broadly to include any "[g]overnment records on an individual which can be identified as applying to that individual." *Id.* at 602 (internal quotation marks omitted). Thus, Exemption 6 permits exemption of "not just files, but also bits of personal information, such as names and addresses, the release of which would create[ ] a palpable threat to privacy." *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 152 (D.C. Cir. 2006) (internal quotation marks omitted). The second Exemption 6 requirement is that "the information must be of such a nature that its disclosure would constitute a clearly unwarranted invasion of personal privacy." *See Washington Post Co.*, 456 U.S. at 598. This second requirement demands that a court "weigh the privacy interest in non-disclosure against the public interest in the release of the records in order to determine whether, on balance, the disclosure would work a

15

clearly unwarranted invasion of privacy." *Lepelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999) (internal quotation marks omitted); *see also Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1228 (D.C. Cir. 2008). The only relevant public interest in this balancing analysis is "the extent to which disclosure of the information sought would she[d] light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." *Lepelletier*, 164 F.3d at 46 (internal quotation marks omitted).

Here, pursuant to Exemption 6, in 13 documents produced to Ms. Walston DOD withheld the names, email addresses, phone numbers, signature blocks, and office locations of the low-level DISA employees who conducted the investigation related to her complaint. Def.'s Mem. Supp. at 16; First Decl. of Mark H. Herrington ¶¶ 11-13. This information is the sort that satisfies Exemption 6's first requirement, as the DISA OIG investigators, working in a component of DOD, are employed in a "sensitive agenc[y]" and have "sensitive occupations." *See Long v. Office of Pers. Mgmt.*, 692 F.3d 185, 192 (2d Cir. 2012). Accordingly, they "have a cognizable privacy interest in keeping their names from being disclosed." *See id.*; *see also Ctr. for Pub. Integrity v. U.S. Office of Pers. Mgmt.*, No. 04-1274, 2006 WL 3498089, at *3-4 (D.D.C. Dec. 4, 2006) (accepting a plaintiff's concession that personal information about DOD employees constitutes the

16

type of information that satisfies Exemption 6's first requirement); *O'Keefe v. U.S. Dep't of Defense*, 463 F. Supp. 2d 317, 326 (E.D.N.Y. 2006) (holding that names and telephone numbers of DOD personnel who conducted or reviewed an investigation constitute the type of information that satisfies Exemption 6's first requirement). Thus the information withheld in this case was the sort of personal information "the release of which would create[ ] a palpable threat to privacy." *Judicial Watch*, 449 F.3d at 152 (internal quotation marks omitted).

The privacy interest that exists here is not outweighed by the public interest in the release of the redacted information. "In this balancing analysis, [Ms. Walston] bears the burden of establishing a legitimate public interest supporting disclosure which is in line with the core purpose of FOIA, to contribute to greater general understanding of agency practice and procedure." *Clemmons v. U.S. Army Crime Records Ctr.*, No. 05-2353, 2007 WL 1020827, at *5 (D.D.C. Mar. 30, 2007) (citing *U.S. Dep't of Defense v. Fed. Labor Relations Auth.*, 510 U.S. 487, 495 (1994)). Ms. Walston has not attempted to demonstrate a legitimate public interest supporting the disclosure of the investigative employees' names, phone numbers, email address, and office addresses. *See* Pl.'s Opp. at 6. In its own analysis, the Court does not see how disclosure of that information would "she[d] light on an agency's performance of its statutory duties

17

or otherwise let citizens know what their government is up to." *Lepelletier*, 164 F.3d at 46 (internal quotation marks omitted). Accordingly, DOD's motion for summary judgment on this issue is **GRANTED**.

### C.   Segregability

If a record contains some information that is exempt from disclosure, any reasonable segregable information not exempt from disclosure must be released after deleting the exempt portions, unless the non-exempt portions are inextricably intertwined with exempt portions. 5 U.S.C. § 552(b); *see Trans-Pac. Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1027 (D.C. Cir. 1999). The Court has an "affirmative duty to consider the segregability issue." *Trans-Pac. Policing Agreement*, 177 F.3d at 1028. The reviewing court may rely on the agency's description of the withheld records and its declaration that it has released all segregable information to conclude that the agency has fulfilled its obligation to show with reasonable specificity why documents cannot be further segregated. *See Loving v. Dep't of Defense*, 550 F.3d 32, 41 (D.C. Cir. 2008).

Here, Mr. Herrington avers that "[a]ll of the documents addressed herein have been carefully reviewed for reasonable segregation of non-exempt information, and it has been determined that no further segregation of meaningful information in the withheld documents can be made without disclosing

18

information warranting protection under the law," First Decl. of Mark H. Herrington ¶ 15, and he describes in some detail the portions of the documents that have been withheld pursuant to Exemptions 5 and 6. *Id.* ¶¶ 10, 13. Based on Mr. Herrington's averment that no further segregation is possible and his explanation of the basis for the redactions that were made, it appears that DISA OIG has redacted only what was necessary to protect the exempt information. Thus, DOD's "affidavit[ ] provided here show[s] with 'reasonable specificity' why the documents cannot be further segregated." *Armstrong v. Exec. Office of the President*, 97 F.3d 575, 578 (D.C. Cir. 1996). Accordingly, the Court concludes that DISA OIG has released all reasonably segregable information and, thus, DOD's motion for summary judgment as to this issue is **GRANTED.**

## IV. Conclusion

For the reasons stated above, DOD's motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART WITHOUT PREJUDICE.** As to its claimed exemptions and the segregability of the records it has produced, DOD's motion is granted. As to its search for records, DOD's motion is denied without prejudice. An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

Signed:    **Emmet G. Sullivan**
           **United States District Judge**
           **February 28, 2017**