UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LINDA P. WALSTON,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF<br>DEFENSE, *et al.*,<br><br>Defendants. | Case No. 1:15-cv-02202 (TNM)<br>Case No. 1:16-cv-02523 (EGS) |

### MEMORANDUM OPINION

Before the Court is a motion for summary judgment filed by the Defendants, the Department of Justice and the Defense Information Systems Agency. The Defendants argue that they are entitled to summary judgment on Plaintiff Linda Walston's Freedom of Information Act claims because they have demonstrated the adequacy of their searches for records related to a complaint that Ms. Walston filed with the Department of Defense. Ms. Walston argues that some of her Freedom of Information Act requests seek a broader range of records that are beyond the scope of the Defendants' searches. Because Ms. Walston's allegations about the existence of further responsive records are speculative and the Defendants have adequately demonstrated that their searches were reasonably calculated to identify any responsive records, the Defendants' motion for summary judgment will be granted.

### I. BACKGROUND

The Freedom of Information Act (FOIA) requests at issue in the consolidated cases now before me are related to a complaint that Ms. Walston made to the Department of Defense's Office of the Inspector General (IG) upon her alleged discovery that her computer had been hacked by IP addresses registered to the Department of Defense's Network Information Center

(NIC). Compl. ¶ 8.[1] The Defense Information Systems Agency (DISA), which is a component of the Department of Defense, assigned Ms. Walston's Department of Defense complaint the case number 2014-0193. *Id.* at ¶ 9. Ms. Walston then submitted a FOIA request to DISA for "all documents that refer or relate to DISA OIC Hotline Case No. 2014-0193." *Id.* at ¶ 10; *see also* Declaration of Linda P. Walston Ex. 2, 1:16-cv-02523. Later, Ms. Walston submitted a second set of FOIA requests for "all responsive records pertaining to DISA IG case # 2014-0193" to four DISA agencies—the NIC, the Security Operation Columbus Network Assurance (COLSNA), the Incident Response Branch DISA Field Security Operations (IRB), and DISA ESD. Compl. ¶ 15, 1:16-cv-02523; *see also* Declaration of Linda P. Walston Exs. 3-6, 1:16-cv-02523. Ms. Walston then sued the Defendants for failure to comply with her FOIA requests, filing one case for her first request and another for her second set of requests. Finding that the cases involved common questions of law and fact, Judge Emmet G. Sullivan consolidated the cases on March 27, 2017.

Shortly before the cases were consolidated, Judge Sullivan entered a Memorandum Opinion and Order granting partial summary judgment to the Defendant in the case regarding Ms. Walston's first FOIA request. Judge Sullivan determined that the Department of Defense was entitled to summary judgment as to its claimed exemptions and its arguments regarding the segregability of the records produced, but was not entitled to summary judgment as to the adequacy of DISA's search for responsive records. Op. at 19. Judge Sullivan determined that the Defendant's declaration in support of summary judgment did not contain all the information needed for the Court to determine that DISA's search was adequate and instructed the

---

[1] All citations to court filings in this opinion are to filings in case 1:15-cv-02202 unless otherwise noted.

2

Department of Defense to file a renewed motion for summary judgment with a sufficiently detailed declaration, after conducting a new search if necessary. The Defendants in the consolidated case filed the renewed motion for summary judgment that is now before me, and the only question at issue is whether their declarations sufficiently demonstrate the adequacy of their search for responsive records.

## II. LEGAL STANDARD

To prevail on a motion for summary judgment, a movant must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986). The FOIA requires federal agencies to "disclose information to the public upon reasonable request unless the records at issue fall within specifically delineated exemptions." *Judicial Watch, Inc. v. FBI*, 522 F.3d 364, 365-66 (D.C. Cir. 2008); *see also* 5 U.S.C. § 552(a)(3)(A) (records sought must be "reasonably describe[d]"). Thus, a FOIA defendant is entitled to summary judgment if it demonstrates that there is no genuine dispute as to whether "each document that falls within the class requested either has been produced, is unidentifiable or is wholly exempt from the Act's inspection requirements." *See Weisberg v. Dep't of Justice*, 627 F.2d 365, 368 (D.C. Cir. 1980). The "vast majority" of FOIA cases are decided on motions for summary judgment. *See Brayton v. Office of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011).

To show that any unproduced documents cannot be identified, a defendant must demonstrate "a good faith effort to [] search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). In other words, the defendant must "demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents."

3

*Nation Magazine v. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995). However, the touchstone of the analysis is the reasonableness of the search, not the records produced. *See Hodge v. FBI*, 703 F.3d 575, 580 (D.C. Cir. 2013) ("[T]he adequacy of a search is determined not by the fruits of the search, but by the appropriateness of [its] methods."); *Mobley v. CIA*, 806 F.3d 568, 583 (D.C. Cir. 2015) ("[A] search, under FOIA, is not unreasonable simply because it fails to produce all relevant material.").

An agency has discretion to craft its search to meet this standard, and does not have to search every system if additional searches are unlikely to produce any marginal return. *See Campbell v. Dep't of Justice*, 164 F.3d 20, 28 (D.C. Cir. 1998). Searching for records requires "both systemic and case-specific exercises of discretion and administrative judgment and expertise," and is "hardly an area in which the courts should attempt to micro-manage the executive branch." *Schrecker v. Dep't of Justice*, 349 F.3d 657, 662 (D.C. Cir. 2003). To demonstrate the reasonableness of its search, an agency can submit a "reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Oglesby*, 920 F.2d at 68. Agency declarations are given "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs. Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991).

### III. ANALYSIS

Judge Sullivan found that the declaration supporting the original motion for summary judgment lacked sufficient detail in two respects. First, it did not aver that all files likely to contain responsive materials were searched, which Judge Sullivan found particularly troubling in light of the fact that it appeared materials in the DISA IG database might be located in two

separate locations and it was not clear whether both had been searched. Op. at 10-11 (citing *Oglesby*, 920 F.2d at 68). Second, it did not specify all of the search terms used in responding to Ms. Walston's FOIA request. Op. at 11-12 (citing *Oglesby*, 920 F.2d at 68).

The Defendants have remedied the inadequacies of their original affidavit, providing additional affidavits that supply the search details Judge Sullivan found lacking. In response to Ms. Walston's first FOIA request to DISA, DISA determined that any responsive records would be under the purview of the IG's office. Berger Decl. ¶ 5. The IG then used the search terms "Walston," "Linda Walston," "Linda," and "2014-0193" to search "all electronic records on the DISA IG share drive, DIGit database, and individual investigator computers." Christy Decl. ¶ 4. This search was conducted in the DISA IG offices in Fort Meade, Maryland, and covered "the entire universe of files" likely to contain responsive records. *Id.*[2] Ms. Walston does not dispute that these affidavits demonstrate the adequacy of the search conducted in response to her first FOIA request.

However, Ms. Walston challenges the adequacy of the searches conducted in response to her second set of FOIA requests, which specifically asked that the records of four agencies within DISA be searched: NIC, COLSNA, IRB, and DISA ESD. The Defendants have submitted an affidavit explaining that DISA's FOIA officer confirmed NIC had no involvement with the investigation and determined that no further search of NIC records was necessary. Berger Decl. ¶ 12. The affidavit also explains that Ms. Walston's requests for searches of COLSNA and DISA ESD records were duplicative because DISA ESD has been incorporated

---

[2] Although DISA IG investigators will sometimes create paper files when a physical file is necessary—for example, when physical evidence must be retained as part of the official record— the affidavit explains that the investigation of Ms. Walston's complaint would not have produced any records necessitating a physical file. *Id.* at ¶ 3.

into COLSNA. *Id.* ¶ 11. Accordingly, the Defendants responded to Ms. Walston's second set of FOIA requests by searching for responsive COLSNA and IRB records.

The Defendants searched COLSNA's paper files, a computer hard drive, shared drives, and emails using the search terms "Walston" and "2014-0193." Ball Decl. ¶ 6. The search was conducted in Columbus, Ohio, and included "the entire universe of locations where records responsive to Plaintiff's FOIA [request] would exist at COLSNA." *Id.* The Defendants determined that the IRB investigator who worked on Ms. Walston's complaint did not create or maintain any documents or records related to the complaint other than emails, and they searched his emails from his office in "Chambesburg [sic], Pennsylvania" using the search terms "Walston," "2014-0193," "Corey," and "Ball." Shuhart Decl. ¶ 5. The Defendants aver that their searches for responsive COLSNA and IRB records produced no new records that were not already located in the search of DISA IG and that "no other organizations within DISA would have any records responsive to plaintiff's FOIA request." Berger Decl. at ¶¶ 11-13.

Ms. Walston argues that these searches were inadequate in response to her second set of FOIA requests because the Defendants should have searched NIC for responsive records and should have used as search terms four NIC IP addresses that she believes are associated with the hacking of her computer. *Id.* Although agencies have discretion in crafting their searches, *Schrecker*, 349 F.3d at 662, Ms. Walston takes the view that any adequate search in response to "a FOIA request for records of computer analyses and queries regarding logs that include four NIC IP addresses" would have to include the NIC and use the IP addresses as search terms.[3] Pl.'s Opp. to Mot. Summary J. 6.

---

[3] To the extent that this characterization of Ms. Walston's second set of FOIA requests makes it distinct from her first, it is in tension with her complaint's description of the request as seeking records "pertaining to DISA IG case # 2014-0193." Compl. ¶ 15, 1:16-cv-02523. Consistent

I cannot agree with Ms. Walston's contention, which amounts to "purely speculative claims about the existence and discoverability of other documents." *SafeCard Servs. Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991). The Defendants have submitted an affidavit stating that NIC files were not likely to contain responsive materials because NIC had no involvement in the investigation of Ms. Walston's claims and explaining that the registration of IP addresses to NIC is not an indication to the contrary. Berger Decl. ¶ 12. Ms. Walston's speculation that NIC possesses responsive records is insufficient to rebut this affidavit. The Defendants have also submitted an affidavit stating that DISA completed its investigation into Ms. Walston's hacking complaint by reviewing the records she provided and conducting CENTAUR queries of network traffic history that determined "there was no communication between any DoD IP address [including any NIC IP address] and the complaintants [sic] commercial ISP IP addresses." Shuhart Decl. ¶ 3. The Defendants aver that such queries do not create any records and that the results of the queries were documented in emails that have been identified and produced after searching for records containing Ms. Walston's last name and case number. Ball Decl. ¶ 4; *see also id.* at ¶ 6. Ms. Walston's speculation that other queries may have taken place and might have produced records that would be identified if the Defendants used certain IP addresses as search terms is insufficient to rebut the Defendants' explanation of the sufficiency of their searches.

---

with Ms. Walston's complaint, the Defendants understood Ms. Walston's request for various types of "information that pertains to DISA IG case#2014-0193 [sic] or was derived from data obtained from DISA case#2014-0193 [sic]" as "essentially duplicating" her May 12, 2015 request, although it added specificity as to where she wished DISA to search and indicated her interest in certain specific items, such as any queries of the CENTAUR system for information related to certain IP addresses. Berger Decl. ¶ 9; *see also* Declaration of Linda P. Walston Exs. 3-6, 1:16-cv-02523.

## IV. CONCLUSION

For the reasons explained above, the Defendants' motion for summary judgment will be granted. A separate order will issue.

Dated: March 8, 2018

TREVOR N. MCFADDEN
United States District Judge